Case No. 15-6386, Jesse Lobbins v. United States of America. Oral argument is not to exceed 15 minutes per side. Mr. Lieberman, you may proceed. Good afternoon. May it please the Court, Michael Lieberman on behalf of Petitioner-Appellant Jesse Lobbins. If I could reserve three minutes for rebuttal. All right. The district court used a witness tampering jury instruction that the Supreme Court had rejected in Fowler. And trial counsel did not object to that incorrect instruction. That failure to object was unreasonable as the instruction directly and obviously contravened binding Supreme Court precedent. Now, there was also no strategic reason for failing to object. And most importantly, the incorrect instruction made it easier for the government to convict Jesse Lobbins. And in that circumstance, failing to object to that instruction was deficient performance. How do you think it made it easier in this case? It made it easier because the standard that the Supreme Court adopted in Fowler requires the government to show that the prevented communications, that there was a reasonable likelihood that those communications would have been made to a federal official. A reasonable likelihood that the victim would have communicated with a federal law enforcement person. Is that a fair shorthand? I just want to be careful. The likelihood of the actual communication happening doesn't matter. Assuming there was a communication, is it reasonably likely that it would have been to a federal officer instead of a state one? Oh, okay. All right. Well, I had forgotten that. Oh, no problem. Yeah. So, yeah, it's a little bit of a complicated and tricky inquiry because we're in this kind of counterfactual hypothetical world. Yeah. And so the basic question is, if the witness tampering had never happened and the victim had gone on to communicate with a federal officer or a state officer. And the reason why the Supreme Court adopted this reasonable likelihood standard instead of the government's, what the government wanted was a standard basically saying as long as the communication was possible with a federal officer or it might happen, which was the standard that the district court used here. And the Supreme Court said that's not sufficiently stringent because what's really important here is what Congress was trying to do was protect the integrity of federal investigations. And Congress didn't really have an interest in protecting the integrity of investigations that were really going to be handled on the state side, didn't want to step on any toes of the state prosecutors, and just didn't want to expend federal resources on that kind of thing. And so in 1512, Congress put these two federal nexus requirements in there. The prevented communications, the information that would have been communicated if not for the tampering, has to relate both to a federal offense and there has to be a reasonable likelihood it would have been to a federal official. Is that nexus thing relate to a federal offense? Is that, I mean, that is something that I guess the Supreme Court has said is an element? It's in the statute itself. Okay. The Supreme Court hasn't done kind of a similar analysis as to what burden the government has to prove the federal offense piece of it. And so we're talking about 1512 A to C, correct? Correct. All right. Commission of a federal offense, is that what you're talking about? Correct. Okay. All right. Great. And so a big part of that and kind of the importance of there being two separate federal nexus requirements, both the federal offense and the federal official piece of it, is what the Supreme Court said in Fowler is, look, the government's argument in Fowler was, well, the underlying crimes here were possible federal offenses, so we certainly satisfied that. There was conspiracy to rob a bank and possession of cocaine and marijuana in that case. And the government said, well, that should be good enough. We've proven the federal offense. Whenever there's a possible federal offense, there's going to be a possible communication with a federal official, and so we should win this case. And the Supreme Court said, no, that's not going to be enough. Given kind of the wide range of federal offenses and how most cases that are usually held at the state level can also be tried federally because there are so many federal criminal statutes, just proving that one point isn't going to be enough to satisfy this and to satisfy Congress's desire to keep the statute primarily federal in nature. And so the reason that there was error here and the reason the district court's instruction was incorrect is it basically ignored that part of it and basically told the jury that as long as you find a federal offense, you can go ahead and find that the second element is satisfied as well because the instruction the district court gave here was as long as Boyd, the victim here, might have communicated with the federal government. And in a case where there's an underlying federal crime, you know, anything might happen. It certainly seems possible that that would happen. And the might tracks the possible language that the Supreme Court was saying is inaccurate. That's correct. We want a reasonable likelihood, not the possibility. But what was actually given here tracks more nearly what the Supreme Court rejected. That's right. So in Fowler itself, the instruction that the 11th Circuit or the district court within the 11th Circuit had given said that all that mattered was that it was possible. And the instruction here in this case was that he might communicate. And so I think those are basically the same. The 3rd Circuit before Fowler had a might communicate standard, and it has since recognized that Fowler overturns that standard and requires them to adopt this reasonable likelihood standard. On the prejudice prong, I mean, I guess, well, let's see. I get these guys mixed up. Lovins argued whoever killed the Vanderbilt professor. Churchwell. Okay, Churchwell. I mean, that arguably could have been. I know it wasn't. Could have been charged as a federal crime. Would you agree with that? I would agree as a general matter. I don't know if the jury had enough information about that crime to make that conclusion. I think all the jury knew was that it was a murder. Yeah. Well, I mean, setting aside that question whether the jury knew just for a moment, why, again, do you think that the substantive standard from Fowler wasn't met on this record if the Vanderbilt murder could have been charged as a federal offense? I mean, is there no likelihood that in the event there was a communication, it would have been with the feds? I think the main reason that doesn't work is because the Supreme Court in Fowler basically said that that doesn't work. If all you have is the possible communication of a federal offense, if that's enough by itself, you've read out the second federal nexus from the statute. And in Fowler itself, as I said, there were plenty of underlying federal crimes there. So we know from Fowler there has to be more than just a possible federal offense. And so in some cases, this inquiry can go a couple different ways depending on what happens with the underlying crime. If the underlying crime is not only federal but is in fact prosecuted federally, I think that gets the government a long way towards their ultimate burden in the case to show that a federal communication would have been reasonably likely. But if it's something that was actually prosecuted at the state level, then I think we're in a whole different world where the government really has a burden there to show that even though this was handled at the state level by state prosecutors and state court, for some reason there would have been some kind of federal involvement in that case. And the federal government's done that in some other cases. There have been in the Fourth Circuit, there's a case called Smith that shows this pretty well. The underlying crime were basically street-level drug offenses that would generally be prosecuted at the state level. But the government called a DEA agent to the stand who said, look, we work really closely with the Baltimore City Police on this kind of thing. We are always investigating drug crimes alongside them. We probably would have talked to this witness if she hadn't been killed and all that kind of stuff. And so the government can put that evidence on and say even though it was prosecuted at the state level, there are joint task forces or some other reason the federal government would have gotten involved. And we don't have any of that here. We have essentially no evidence beyond the fact that the murder could have been tried at the federal level. And again, I'm not even sure the jury could have concluded that much at all. You know, the government tried to prove this nexus. Their strategy was basically to ask the cooperating witness, Maurice Boyd, whether or not an ATF agent had interviewed him previously. And he just didn't give them the answer they wanted. They said, was there an ATF agent there? And he said, I talked to the district attorney. They said, was there an ATF agent there? And he said, there were a lot of people there. They were leading questions that didn't get the answer. Right. And didn't get the objection they should have gotten either, but that's a different story. And so, you know, they tried. They didn't get it. They didn't really have a backup plan. And they're kind of just left with this commission of an offense that could have been charged federally, but ultimately wasn't. And I think under Fowler itself, and then all the cases from other courts kind of interpreting Fowler, that's just not enough to actually meet their burden here. And I think I've kind of – I want to be clear. I think I've used sufficiency of the evidence language a couple of times, saying that there isn't even enough evidence here. I mean, that's not my burden right now. I just have to show a reasonable probability that the jury would have come out differently if it was instructed on the right standard. I think I can do a lot more than that. I really don't think there was enough evidence. If you look at, like, the Seventh Circuit case called Snyder, that was on direct appeal, a sufficiency of the evidence challenge, and the conviction was vacated. And there was much more evidence there than there is here. I mean, there you have the state police gets on the stand and testifies that the FBI actually shares office space with them and actually provided some forensic assistance on the exact case. And even all that's not quite enough to prove the federal communication. And so I think, you know, if trying to place this case on the spectrum of all the other cases that have interpreted this, this case is pretty close to the bottom in terms of what the government was able to offer here. And so I just don't think that's enough to show. What about the government's argument that the instruction is given, which, as I recall, focused more on Boyd's intent to speak to law enforcement? Am I recalling that correctly as a premise here? It's focused on what Lobbins predicted or whether he believed. Whether Lobbins thought Boyd would talk to somebody, right? Talk to somebody. If you're couched in those terms, the government says that actually might be more favorable to your client or had been more favorable. Why on the record, again, do you think that's wrong? So I think that's wrong for a couple of reasons. First, I mean, the idea that counsel had done this strategically and didn't object because he thought that might be more favorable, I think that gives trial counsel a bit too much credit. It's not as if he was making a bunch of different objections and then held some back for some nuanced reason. He made no objections. There were six different counts here and there were plenty of reasons to object to some of these instructions. And he just submitted a one-page letter that said, I have no objections to any of these. And so I don't think there was kind of a lot of strategic thought going into it. All right. My question is more based on the record. Yeah, even if there was, I mean, there's no basis in the record to suggest that Lobbins knew that Boyd was even awaiting sentencing, much less was in on federal charges. This was a facility actually run by the state that had state and federal detainees. There's no suggestion that Lobbins even knew Boyd at all outside the context of this, much less knew that Boyd had a federal sentencing coming up. And then in terms of kind of whether this could have been strategy or not, if it was strategy, it wasn't one that was carried out at all because if you read the closing argument, this isn't an argument trial counsel make. Trial counsel doesn't get up there and say, oh, well, who knows what would have happened to the real world, but Lobbins certainly didn't believe that this happened. He didn't say any of that. He was talking about the fact that in actuality, the objective facts were that the underlying crime, the Churchill murders, were tried at the state level. And that's really where he rested his defense, which really shows why the error was so egregious here to kind of rest your defense on this one element of the crime, but then not even ask for the proper instruction to make it harder to convict on that. I think that's the fundamental error, and that's why it was not only deficient performance, but also prejudicial. And then if I can make one last point before I sit down here, the government's briefs... Before you go into that, what about the government's contention that there's not any reasonable probability that Lobbins would have failed to have been convicted if the jury had been instructed, as they should have been under Fowler, that, well, I guess it goes to prejudice basically that this small language change wouldn't have made any difference in the outcome. So I just don't think that's right, and I think that kind of goes against the whole point of Fowler. The reason the Supreme Court took that case is there was a circuit split among these two standards, and if those two standards were basically the same and didn't make a difference, it wouldn't have taken the case. It wouldn't have gone through in the first part. That might be good as a general proposition, but with regard to this particular case and how things would have played out in light of the evidence that was presented or available, maybe the outcome wouldn't have made a difference, notwithstanding the policy reasons that the Supreme Court may have had for deciding the cases they did. May I answer? Sure. I really think it comes back to the fact that the government really did not have any evidence at all in this record of a federal nexus beyond the commission of a possibly federal crime. That's the extent of what's in the record, and I think that might be something that would satisfy the might-communicate standard or the possibility standard, but Fowler is very clear that that fact alone cannot satisfy the reasonable-likelihood standard, and that's the big jump that the government can't make. And that's why there's a reasonable probability that the jury would not have made that jump as well. I have one more question. You discussed the possibility of a remand. What's your best case that we have authority to remand this for consideration of other ineffectiveness claims or to permit lobbying to refile an amended 2255? I don't have anything from the Sixth Circuit. I cited a couple cases in the reply brief from other circuits, and I think it's just the general idea in, you know, like I said, I don't have authority from the Sixth Circuit, but we've gotten this far on a pro se basis. On the assumption this Court finds ineffective assistance of counsel, I think that makes it somewhat more likely there might be some other errors lurking in the record down there, and I think, you know, given Rule 15 says to give leave to amend kind of generously, I think it would make some sense to be able to go down, have counsel look at this record and take a look and see if there's anything else there. There might not be, but, you know, it certainly could be. Do you have nothing specific in mind that you could tell us the record indicates might need to be reconsidered on the first time basis? I've really focused kind of on this particular count. I mean, in reading through, I saw some other errors. I'm not sure they amount to constitutional errors, but there certainly were plenty of other errors made, and I certainly wouldn't be surprised if there was some constitutional error in there, but I don't have anything specific right now off the top of my head. Thank you. Rule 15 is usually invoked before a final judgment center, you know. I mean, liberally, whatever goes so far, you know. Thank you, Your Honor. May it please the Court, Cecil Van Devender on behalf of the United States. In order to prevail on this 2255 challenge, Mr. Lobbins has to make three showings, two related to deficient performance and one related to prejudice. So let me start with the deficient performance prong, if I may. There, he has to show both that as of the time of the jury instructions here, which are just three months after Fowler was handed down, it was clearly foreshadowed that Fowler's holding would be extended to 1512A2C. Second, even if that was clearly foreshadowed that there was no valid strategic reason not to prefer the jury instruction that the district court drafted. What indication in the record is there that this was a strategic choice? So that hasn't been fleshed out because there was no evidentiary hearing on the 2255, but there's a fair bit of case law basically saying that when the record is silent on whether something was in fact a strategic choice, the court should assume that decisions made by trial counsel were based on a valid strategy. What about the fact that here, the very argument that would have been used was not even used in closing argument? Isn't that an indication that there was, that this was not a strategic consideration for a purpose? Well, I don't think that that's really an accurate characterization of the closing. I mean, defense counsel sort of hit a number of points on closing, but certainly a big part of his argument was, we don't know why Jesse Lobbins assaulted Maurice Boyd, but we do know they were in rival gangs. Maybe that's why he assaulted him. Maybe one of the other attackers had been provoked by Maurice Boyd. And so it fit in well with this theory of, you should have quit because you don't know what Jesse Lobbins' motivation was to keep this marginally higher standard on the mens rea element that would have fallen out had the Fowler objection been raised. So going back to the clear foreshadowing, I think it's important, again, to kind of look at the case from the perspective of three months after Fowler and avoid the distorting hindsight that sometimes comes in years later. And I think it's sort of a useful data point to ask, what did the district court judge see as the law at the time? Jury instructions is sort of an unusual part of a criminal trial. Most of the trial, it's the parties that kind of identify and tee up the issues. But when it comes to jury instructions, it's uniquely the province of the district judge to tell the jury what federal law is. And here, Judge Campbell— Does that affect when the district court doesn't do it correctly? Well, certainly, Your Honor. But my point is— This one would have made a difference. Perhaps so. Perhaps it would have resulted in a slight change to the jury instructions that could have cut in two different ways. Same change made in Fowler, more or less. More or less, right. Which the Supreme Court took the time to write an opinion about. I mean, it's a significant matter. Well, yes and no. I mean, I think when talking about the significance of Fowler, I think one very important consideration there is how did people see Fowler at the time? So certainly in the seven years since, some courts of appeals have given Fowler some teeth. But if you look at Justice Scalia's concurrence in Fowler, he says, I doubt that any reasonable jury is going to be able to appreciate any distinction between this could-possibly-communicate standard and reasonably-likely-to-communicate standard. Isn't that exactly the kind of things that often govern the results in cases? Particularly, we talk all the time about what is the review standard. Oh, well, we're in a beyond-a-reasonable-doubt, or we're not in that. And so, so much of the case law absolutely turns on what that standard is. And here the Supreme Court took careful care to say, a possibility is not good enough, and to articulate why you needed a different standard. And yet the instruction that was given in this very case went right back to what the Supreme Court said, it's worth my time to explain to you that you don't get to do that. So why isn't that a significant difference? Well, I think the fact that they took the case to kind of resolve this circuit split, sort of neither here nor there, I think the question is how big a difference was there between might-communicate or could-possibly-communicate and reasonably-likely-to-communicate. And again, Justice Scalia says, I don't think any juror is going to be able to appreciate this distinction. But his was not the majority opinion. That's right, but we might want to just sort of set aside the question whether that standard makes a difference. I mean, that might not be the best way for you to spend your time, to be candid with you. I understand. And so you're trying to say that people might not have really seen that the court's interpretation of A1C, if I recall there, would apply to A2C. A1C says prevent the communication. A2C says hinder, delay, or prevent. And you suggest that hinder or delay might somehow distinguish A2C, and so we can't blame counsel for immediately objecting. But yet, unless I'm misreading your brief, I don't see any reasoned basis in your brief to suggest what that, you know, distinction would be and why those words would create a different outcome for this, nor am I aware of the government ever contesting. And please tell me if I'm wrong. So far as I know, the government has never even contested that the Fowler standard would apply in an A2C case. Frankly, I don't think we have any A2C cases where this has come up. In the Johnson case of the Ninth Circuit, which was, I think, a 1512B3 case, the government did say the Fowler standard doesn't apply to that subsection and the might standard should apply even several years after Fowler. So it is something that still remains kind of an open issue. But why? I mean, the government, you cite the Booker example. Apprendi, you know, Booker issue before Booker. Post-Apprendi before Booker. Blakely. I'm sorry, Blakely. But my recollection is that the government or the states, whatever, were vigorously contesting the extension of Apprendi to those other areas. And I just don't see any parallels in the way this is being treated. Well, a couple of points on that. One, I think it would be ‑‑ I don't think it's appropriate to attach a lot of significance to whether the government has conceded the issue because part of that goes to kind of how significant the difference is between the might communicate and reasonably likely to communicate standard. I doubt the government is letting the wrong standard, in its view, sort of go through. But, I mean, I'm not going to presume to tell you your business. Well, I'll just say often when an issue is raised before trial and it seems as though the defendant is asking to raise the bar minimally and you can just say we're going to take this issue off the table for purposes of appeal, let's just agree and go forward, that's not unusual and certainly there are cases like Beckles where the government decides to err on the side of caution and make a concession that's later rejected by court. So the fact of government concession in other cases I don't think is dispositive of whether it was obvious. I'm not seeing the basis to think that anyone would argue this doesn't ‑‑ Fowler doesn't apply to this provision. I just don't see it. And nor do I ever see the government presenting a basis. Well, I think the main distinction would not be so much the textual distinction between A1C and A2C but the narrowness of Fowler's factual context. The court emphasizes it over and over again. We're considering a case where the victim witness is actually murdered and so we have to speculate what would have happened had he or she not been murdered. I mean, they say it's an A1C case. A1C talks about attempt to kill. I mean, they're interpreting that provision. That's a holding for that provision categorically. Categorically. I mean, you can argue otherwise but, I mean, you know, good luck to the circuit that distinguishes that case in an A1C case based on the person being dead rather than attempts and puts forward the same instruction that was rejected by the court in that case. You know they would get vaporized, the circuit that does that. I mean, I think it applies categorically to A1C. Well, okay, so let me pivot then. And have the 2nd Circuit and the 11th Circuit said that? In those cases didn't the government concede it? That could be. Those circuits. That could be. I'm not sure, Your Honor. So let me switch to this strategic point just for a moment. I understand that Your Honor thinks that that's not necessary. I think the point is it would not be unreasonable for a competent attorney to view the significance of Fowler as Justice Scalia did as of just a few months after Fowler and to say, okay, I'll accept that this raised the bar a little bit. Are there any costs to counterbalance what I could get by raising this Fowler objection? And as noted, the instruction that Judge Campbell drafted did have essentially a higher mens rea burden than what would have applied had the Fowler objection been raised. And I think it's well within the realm of strategic consideration to say, I'm not going to trade off this heightened mens rea standard for this minimally heightened federal nexus standard. Okay, let me talk now about prejudice. So as Fowler makes clear, what the Court is concerned about is cases in which there's some theoretical possibility that communication could go to a federal law enforcement officer, but that possibility is remote, outlandish, hypothetical. Here what we have is a very high-profile gang-related double murder that clearly was chargeable as a Vicar murder committed by the same gang members as Jesse Loppins. So while he's in federal custody on a federal racketeering-related murder charge, one of his fellow gang members carries out this other murder, and he gets orders to assault the person who has heard the confession of Levante Churchwell. And so when someone in federal custody hears about a federal crime, I don't think it's remote, outlandish, or merely hypothetical to think that he is going to eventually communicate the information that he's heard to a federal law enforcement agent. Isn't the information about the Churchwell case? Yes, which again was chargeable as a federal murder, although ultimately it was prosecuted in state court. Did the jury know it was chargeable here? Well, I think there was testimony about kind of the gang-related nature of the murder, I believe, and given that that was the essence of the Loppins and Battle case, I think it was clear to them. Okay, and you're doing a good job here, okay? I don't mean to give you a hard time, but is there any part of the record you would point us to for the proposition that the jury would be aware that this was a high-profile Vicar-eligible offense as opposed to some garden-variety kind of hand-to-hand transaction deal? I mean, I understand your point, and don't diminish it, but my question is does the record really support it? I think first let me say that when we're talking about what the record shows here, I think the petitioner wants to treat this as though it's a sufficiency challenge on direct appeal and say all that's in the record is what was presented to the jury. But in 2255, I think it's not unusual for courts to say, okay, well, if a different jury instruction had been given, if a different defense had been presented, what evidence which was not presented to the jury could have been presented? And here we have paragraph 46 of the pre-sentence report, which is unobjected to, saying prior to the stabbing by Lobbins of Boyd, Boyd had conveyed the information about the Churchwell murder to federal law enforcement. Do you have any authority for the proposition that in 2255 we look beyond the trial record to determine prejudice at trial? Well, I don't have cases off the top of my head, but I think, for example, you can imagine a case where at a trial there was something that was not an element of the offense. So there was no proof on it one way or the other because the instructions said that it was not an element. Later, a court of appeals says, in fact, that that is an element of the offense. For example, materiality and nature. I think it would be perfectly appropriate in 2255 for the court to say, well, had materiality been an element, here's all this evidence that could have been presented. I've never seen that case where it could have been presented. I mean, just my own experience, and maybe it's not so much 2255s, but my own experience is when the standard changes, you just look back at the same record and say, well, did the evidence, you know, overwhelmingly support that or whatever the standard might be. And here, I mean, I just don't think the jury, I'm just not aware of any part of the record that supports the idea that the jury knew that this thing was, you know, a big federal Vicar-eligible offense. Well, just to kind of go back to the kind of methodology point of whether the court can consider things outside what was presented directly to the jury, I mean, you can imagine a case, for example, where a 2255 petitioner comes in and says, counsel was ineffective for failing to present an alibi defense. It would be perfectly appropriate for the court to say, well, had he done so, here's all these witnesses who could have testified that in fact know that alibi fell apart. None of that came into the jury, but it's perfectly reasonable for a court to consider that. And so, you know, and I think this unobjected to paragraph 46 of the PSR saying that Boyd did in fact communicate with federal law enforcement prior to the stabbing, I think that also kind of is a factor in the strategic communications. I mean, again, we don't know exactly what trial counsel did know because there hasn't been an evidentiary hearing, but if in fact he, as far as he understood it from reviewing the discovery, Boyd had told the ATF about it, it would be perfectly reasonable to say I'm not going to waste my time, you know, banging the table on this federal nexus requirement when I know that even under Fowler he's met it. Okay. And finally, just very briefly, Your Honor, going back to your point about a remand, we would say that even if the court were to vacate count 66, there's no basis to have further proceedings to determine whether any of the other counts are affected. If he wants to pursue those, he can file a petition for authorization to file it. But under this, no alteration of sentence? Is that this would not alter his? That's correct. That's correct. This is a 30-year sentence that runs concurrently with a number of others, and then there's a consecutive one on top of that. So it would be basically a $100 special assessment. That would be the extent of it. Thank you. Thanks. If I could just make three quick points. On the first question, kind of what did the jury know? How much did it know about whether this was a racketeering-related murder or a gang-related murder? So there really isn't anything. They know that Churchwell was in a gang, but they don't know that the murder itself was gang-related. But on top of that, things that they do know, they do know that it was actually being prosecuted by the DA and was actually tried in state court. And so even if they would have had enough information to infer that it could have been prosecuted federally, they knew for a fact that it was not being prosecuted federally. And I think that's really the key point here, is that the jury actually knew that state investigators were the ones who were investigating this and federal investigators were not. In terms of the statement in the PSR, I mean, I don't know the answer to your question, Judge Katzler, as to whether or not we can kind of think about an imaginary world where they would have put on more evidence. But if that's all they can point to, I think there's two problems there. The first is that they tried to put that evidence on and didn't get it out of their witness. And so to think they can get like a second bite at the apple, or really a third bite at the apple now to pretend that they got the answer they got, I don't think that works at all. It's not as if they decided they didn't need to put on this evidence because they didn't think this was the standard or whatever it was. They tried to put on this evidence, weren't able to. And so I don't think it would be right to now credit the evidence as if it had come in in the first place. And then the last point I'll make on that is just that even if Maurice Boyd had talked to a federal official before the witness tampering, that still doesn't necessarily prove that he would have talked to a federal official afterwards. Because you can think of a scenario where the federal government is thinking about, well, should we intervene in this case? Should we take over this prosecution? They talk to the witness, decide, no, there's no real federal interest here. We're not going to talk to anybody. We're going to drop this whole matter. And then when the question comes, would Boyd have communicated with a federal official going forward, the answer would be no because the federal government was out of it at that point. So even if they had proven he had previously spoke to a federal official, I don't think that's enough to show that he would have in the future. In terms of the closing argument, I think counsel mentioned that during closing argument, Lobbins' counsel made some sort of variant argument based on this kind of subjective standard that he thinks might have been part of the strategy. I mean, the argument that trial counsel was making there was not about whether Lobbins believed that Boyd would talk to a federal versus state official. And that's the subjective instruction that was actually given. The argument counsel made at closing argument was about whether Lobbins was tampering at all. And so that's the mens rea element of the statute, not the federal nexus element. So he certainly made that argument. Lobbins wasn't trying to tamper at all. Lobbins was simply retaliating for some other gang-related thing. But he certainly did not make this kind of Lobbins didn't believe that Boyd would talk to a federal official kind of argument. And that's the only kind of strategy I've heard the government suggest he made. And then the very last point, counsel suggests that the Fowler standard isn't all that different from the pre-Fowler standard. I think Fowler itself disposes of that because the defendant in Fowler was convicted under the possibility standard. After the Supreme Court decided the case, the case was remanded and his conviction was overturned and vacated. And so it's clear from that case itself that the standard does make a big difference and it would have made a big difference here. And there's at least a reasonable probability that one juror would have seen this case differently if it had been instructed correctly. Thank you. Thank you very much.